Thank you, Your Honors. Good morning, and may it please the Court, my name is Kristen Kirka, and I represent the petitioner, Orlando Vasquez-Valle. I'd like to reserve two minutes of my time for rebuttal. We'll try to remind you, but it's up to you to watch your clock. Thank you, Your Honor. In this Court's recent and precedential decision addressing a California witness tampering statute, Escobar v. Vasquez-Valle, there are two types of crimes involving moral turpitude, those involving fraud and those involving grave acts of baseness and depravity. The petitioner's conviction in this case for tampering with a witness under Oregon law is not categorically a crime involving moral turpitude because commission of this crime does not necessarily require fraud or falsification, nor does it necessarily require base, vile, or depraved behavior. Under the plain language of the Oregon statute, no fraud or falsification is required for conviction. Prong A of the statute criminalizes inducing a witness to offer false testimony or unlawfully withhold any testimony, but prong B criminalizes only inducing or attempting to induce a witness to be absent from official proceedings. There is no requirement of an induction to offer false testimony or otherwise engage in fraud. Likewise, fraud is not implicit in the statute. The Escobar Court explains that intent to defraud is implicit in the nature of a crime when the individual makes false statements in order to procure something of value. However, the Court goes on to say that where the only benefit the individual obtains is to impede the enforcement of the law, the crime does not categorically involve moral turpitude. And the Court emphasized that when the outcome is thwarting or interfering with the orderly administration of justice, this is insufficient for a crime to be classified categorically as a crime involving moral turpitude. Further, the Oregon statute does not necessarily require base, vile, or depraved behavior. What is crucial in this definition is that the baseness or depravity be so far contrary to moral law that it should not be used as an excuse for fraud. The Court noted that non-fraudulent CIMTs will almost always involve an intent to injure someone, an actual injury, or a protected class of victims. And the Oregon statute on its face requires none of these three things. Further, no willfulness or evil intent is required. The statute's plain language requires only a mens rea of knowingly, not intentionally. And this is not sufficient to classify a crime as a crime involving moral turpitude. The government argues that intent is implied, but this is incorrect, and it's contrary to both the plain language of the statute and precedential case law. In Robles-Orea, a case involving misprision of a felony under federal law, the Ninth Circuit found that the statute required no intent to conceal or obstruct justice, only a knowledge of the person being tampered with would be called as a witness, but not the person being tampered with. In Soto-Rodriguez, a recent unpublished Ninth Circuit case, this court examined the Washington witness tampering statute, which is similarly worded to the Oregon statute. And that court distinguished merely bad conduct from truly unconscionable conduct, and found that in order to convict, the prosecutor only had to identify the perpetrator, not a specific intent to obstruct justice. And the court in Soto-Rodriguez also found that the crime was not categorically a crime involving moral turpitude. The Oregon statute at issue here requires only knowledge. It does not require an intent to obstruct justice or any other evil intent. And like the Washington and California statutes, it is therefore not categorically a crime involving moral turpitude. The board's comparison of the Oregon statute to the federal witness tampering statute is also erroneous and misleading. The board found that the Oregon statute was sufficiently similar to a federal witness tampering statute, which is included under the umbrella of obstruction of justice offenses. The federal statute requires intimidation, threats, corrupt persuasion, or misleading conduct, none of which are categorically a crime involving moral turpitude. It also requires an intent to influence, delay, or prevent testimony. That is not required by the Oregon statute, which only has a mens rea of knowingly. Further, Oregon law does criminalize obstruction of justice in a separate statute, section 162.235. And that requires either an intent to obstruct by several means, intimidation, force, physical or obstacle, or an intent to defraud. Those are specifically not elements of the witness tampering statute at issue here. The board also relied upon obstruction of justice cases that involved fraud or perjury, but neither of those, as noted, are elements of the statute at issue here. In two recent decisions, one published, the Ninth Circuit has held that tampering with a witness where the only mens rea required is knowledge and not intent is not categorically a crime involving moral turpitude. And we argue for the same reasons that the Oregon statute under which Petitioner was convicted here is not categorically a crime involving moral turpitude. I would reserve the rest of my time for rebuttal unless this court has other questions. That's fine. Any questions right now from the panel? You're relying on the fact that he was convicted under subsection B, or if we get to the modified categorical? Yes, Your Honor, we are. Our initial argument was that the statute was divisible since prongs A and B appeared to be two, involved different elements. And therefore, you would use the modified categorical only to determine under which categorical approach to prong B. As this court is aware, we did provide a 28-J letter on a recent Oregon case involving merger that might imply that, in fact, the statute is indivisible and that there are different ways of committing the statute, but it is an indivisible statute. But we can still look to prong B because if it is an indivisible statute, you still look to what the minimum conduct required for conviction does not rise to the level of morally turpitudinous conduct. Great. Okay. Anything else? No? No. Go ahead and reserve your time, please. Thank you, Your Honor. Thank you for your argument. Now we'll hear from Ms. Singer. Five minutes remain on the screen. Good morning, Your Honors. May it please the Court? My name is Jennifer Singer, and I represent the United States Attorney General in this matter. In light of Escobar and Soto-Rodriguez, it appears that petitioner's conviction for witness tampering under Oregon law may not qualify as a CIMT. And I apologize for not bringing this to the attention of the Court earlier than last week. But in light of You did file the motion last week, right? I did, yes, Your Honor. To remand. Yes. And before you again, I am requesting that the Court remand the case to the and eligibility for relief in light of Soto-Rodriguez and Escobar. That's essentially the government's argument. We find it unnecessary for the Court to decide whether or not it is a CIMT and ask that the Court remand it for the agency to decide it in light of those decisions. But if the Court were to decide whether the Oregon witness tampering statute is a CIMT, I would just like to point out something that may need clarification. In the Soto-Rodriguez case, it seemed that the Court implied that an intent, a specific intent to obstruct justice was sufficient to show the evil intent required for a CIMT. But in the Escobar case, it seemed that the Court found specific intent to obstruct justice was insufficient, that intent to injure was required. So I acknowledge that Escobar was a published case and Soto-Rodriguez was not. But I would just note that for the Court, if the Court were to decide whether. So I have a few questions for you in case we decide to reach the issue ourselves. Do you agree that in making this assessment under the Supreme Court's tailored decision and its progeny in the Ninth Circuit, that we just look at the underlying conduct of Mr. Vasquez Valley? That's correct. Okay, so we couldn't say if he. Your conference is scheduled to end in two minutes. I hope not. We couldn't say that because he initially threatened his spouse and then later pleaded with her not to go testify that there's an implied threat that he's going to harm his spouse if she testifies. That's correct. Under the Supreme Court decision and its progeny, this Court only looks to the elements of the statute. Okay, so just looking at the elements then and the Part B that covers trying to get someone to be absent from the courtroom as opposed to giving false testimony. Why would that be of a CIMT if like a person could just in substance, a husband could be telling his wife, please forgive me and don't go to the Court because of the consequences for our family? Why would that be base or vile or depraved? Under Escobar and Sotomayor, it seems that it would not be that an intent to, a specific intent to obstruct justice would be required or an intent to injure would be required. And I don't believe that under either subsection A or B that those are necessarily met and that is why I would ask that the Court remand the case to the agency. So then why should we remand if it's clear that he should have relief and not be... Your conference is now over. Goodbye. Computer glitch. Judge Fischer, we've got you back. Yes, I'm here. Sorry about that. No problem. These things happen. We paused everything here and we've said nothing more on the case, so we will now proceed. So my, I think what I was asking you was, if we say that it's not a CIMT rather than remanding, isn't the consequence just that he's not a CIMT? He's not automatically excluded from considering cancellation of removal and then proceeding as to whether it should be canceled. The government can say whatever it wants to say along the lines of your arguments. That's correct. Ultimately, the case would have to be remanded. If the Court were to decide that it's not a CIMT, then it would have to go back to the agency for determination of relief. Or the Court could not decide the CIMT issue and send it back to the Board and then the Board would decide. In light of these cases, removability and then, depending on that, eligibility for relief. Okay. Now, let me just ask you, what else would you like to tell us? That's about it, Your Honors. And again, I apologize for not bringing this to the attention of the Court earlier than last week. That's no problem. You had a motion to mediate, I thought. The motion was to mediate for the purpose of agreeing to a remand to the agency. So whether mediation to remand or have the Court remand, the outcome would be the same. I see. Okay. Again, we're adding a minute to your time if you want it, but if you don't... I have nothing further, Your Honors. You can think about something else. Thank you, Ms. Singer. And we'll let Ms. Kurka come back. You reserved some time, but you may not need a lot of it. No, Your Honors. I just wanted to briefly address the issue of remand. We believe that this Court can and should make a decision on whether the conviction is for a crime involving moral turpitude. We don't believe remand is appropriate. The Board already considered the legal issue in this case in the first instance, and the two new Ninth Circuit cases don't create new law or set out a new framework for analysis. They followed what we believe to be already settled case law in both the Board and the Circuit regarding what is required for a crime to be considered, a crime involving moral turpitude. And these two new cases simply clarify and advance this preexisting case law. However, they don't create new law. The Board analyzed the statute extensively. We simply believe they did it wrong and came to the wrong conclusion, so we believe that there's no need to send it back so they can consider it again. We believe that this Court can properly decide that it's not a crime involving moral turpitude, and in that case, remand would be back so that the petitioner could apply for cancellation of removal before the immigration judge. I imagine there are other immigrants or people who are in the same situation as Mr. Vasquez-Valle. I would imagine. I don't know that for sure, but yes, I don't think he's the only immigrant in Oregon to have ever been convicted under the statute. Okay. Thank you. Any further questions from the panel? Well, then I think we've concluded. Thank you, Your Honors. Thanks, Ms. Kirk. I want to thank again both counsel for their fine arguments, and the case of Vasquez-Valle shall be submitted, and we'll go on to the next case on our calendar, also an immigration case.
judges: Fisher, Gould, Paez